IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| Milton LeBlanc, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | No. 15 C 6019 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmàn |
| Mr. Bult's, Inc., | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Plaintiff's motion for partial summary judgment [188] is denied, Defendant's cross-motion for summary judgment [237] is granted, and Defendant's motion to bar the testimony of Dr. Piva [238] is denied. Further, Plaintiff's motion to dismiss for lack of subject-matter jurisdiction [271] is denied. All other pending motions are denied as moot. Civil case terminated.

## STATEMENT

**I.    Plaintiff's Motion to Dismiss for Lack of Subject-Matter Jurisdiction**

Plaintiff's motion to dismiss the case for lack of subject-matter jurisdiction is denied. According to Plaintiff, the Court has lost subject-matter jurisdiction based on several perceived improprieties in this case, including purported violations of his due process rights, fraud, violations of federal and state statutes, abuse of the Court's discretion, concealment of a material fact (it is unspecified by whom), the appearance of bias and prejudice, violations of judicial canons, and the commission of alleged predicate acts under the Racketeer Influenced and Corrupt Organizations Act. (Pl.'s Mot., Dkt. # 271, at 1.) Because Plaintiff cites no valid case law in support of these assertions, the motion is denied. The Court has subject-matter jurisdiction pursuant to diversity jurisdiction under 28 U.S.C. § 1332.

**II.    Cross-Motions for Summary Judgment**

**A.    Procedural History**

The procedural history of this four-year-old case is lengthy; the Court provides a summary of the history only for the period after it was assigned the case earlier this year. When the case was reassigned to this Court on March 26, 2019, Plaintiff's motion for summary judgment, which was filed on March 7, 2019, was pending. (Dkt. ## 188, 200.) On March 28, 2019, Defendant filed a motion to strike Plaintiff's motion for partial summary judgment and statement of facts. After reviewing the parties' briefs, the Court denied Defendant's motion to strike and set a briefing schedule on Plaintiff's motion for summary judgment. (Dkt. # 221.)

Defendant then moved to file a cross-motion for summary judgment and amend the briefing schedule accordingly, which the Court allowed on May 30, 2019. (Dkt. ## 224, 226.) After Plaintiff filed numerous documents and motions unrelated to summary judgment, he sought, on June 24, 2019, an extension of the date on which he needed to respond to the cross-motion for summary judgment – to July 30, 2019. (Dkt. # 256.) The Court granted Plaintiff's request that same day, giving him until July 30, 2019 to respond to Defendant's cross-motion for summary judgment and file a reply in support of his partial motion for summary judgment. (Dkt. # 259.) The Court noted in its order that "[g]iven the lengthy extension, any additional requests to extend the deadline will be disfavored." (*Id*.) Plaintiff did not file any papers on July 30, 2019 regarding either party's motion for summary judgment, and instead, on July 31, 2019, filed the above-mentioned motion to dismiss for lack of subject-matter jurisdiction.

Given Plaintiff's failure to meet the generous deadline provided for his summary-judgment response and reply, and his apparent decision to instead spend his time preparing the motion to dismiss for lack of subject-matter jurisdiction, the Court will address the summary-judgment motions without the benefit of Plaintiff's response. Therefore, to the extent they are supported by the record, the Court deems Defendant's statements of fact to be admitted.

### B. Facts

This case arose from purported injuries Plaintiff suffered in Virginia on July 12, 2013 when the vehicle he was riding in was struck from behind by a tractor-trailer owned by Defendant. (Am. Answer, Dkt. # 35, ¶¶ 11-14.) Plaintiff admits that there was minimal damage to the rear of the vehicle in which he was riding and that "this was a relatively low impact collision." (Pl.'s Mot. Exclude Testimony Regarding Property Damage Vehicles, Dkt. # 42, at 2.) Defendant admits liability for negligence. (*Id*. ¶ 14.) Plaintiff was involved in another unrelated car accident in May 2013, during which he sustained injuries to his back and neck. (Pl.'s Dep., Dkt. # 236-1, at 10-11.)

### C. Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021 (7th Cir. 2018). Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

D.   **Analysis**

The parties agree that Virginia law applies to the instant case. In his motion, Plaintiff seeks judgment in his favor for "economic any-and-all quantifiable damages as proofs allow in accordance with any-and-all applicable Virginia statutes–leaving the issue of non-economic damages to be decided by jury adjudication." He then asks for ninety days from the date of the Court's determination on the matter "to permit the Plaintiff to submit a Memorandum In Support of a Request for Award," as he is "still treating for injuries sustained relating to this accident."

Defendant responds and argues in support of its cross-motion that Plaintiff not only fails to identify specifically what damages he has incurred, he also does not show that the July 13, 2013 accident at issue in this case caused the "economic and non-economic" damages he seeks. "Damages are not presumed in a negligence action." *Gilliam v. Immel*, 795 S.E.2d 458, 463 (Va. 2017). As the Virginia Supreme Court has stated:

> An admission of liability is only an admission of negligence and causation. Therefore, in the context of an automobile accident case, an admission of liability relieves the plaintiff of the burden of proving that the defendant was negligent and that defendant's negligence was a proximate cause of the accident. An admission of liability, however, does not admit compensable damage.

*Id.* It is Plaintiff's burden to prove his damages by a preponderance of the evidence. *Id.* at 462. Given Plaintiff's failure to respond to Defendant's cross-motion, the only information the Court has from Plaintiff with regard to causation or damages is contained in his motion for summary judgment and supporting statement of facts. In the latter, Plaintiff indicates as follows:

14.  Plaintiff has undergone one of the surgical procedures to address injuries sustained in motor vehicle accident occurring 12 July 2013.

15.  Plaintiff has incurred economic and non-economic damages as a result of the motor vehicle accident occurring 12 July 2013.

16.  Records given to the defendants indicate that Plaintiff sustained injuries.

17.  Plaintiff traveled to Costa Rica to obtain evaluation for treatment of injuries in an effort [to] mitigate treatment costs to the Defendants.

18.  Plaintiff requires surgery and treatment.

19.  Plaintiff, through his former attorney[,] provided Defendants with documentation to support damages.

20.  Plaintiff independently provided Defendants with additional bills incurred from and related to treatment.

21. Medical bills are generally admissible as damages whether or not they have been paid.

22. At social security disability hearing a Judge and vocationalist found Plaintiff disabled. Plaintiff received 100 % disability benefits and Medicare Part A and B.

23. In December of 2013 due to injuries sustained in the July 2013 motor vehicle accident, the Plaintiff was administratively terminated from his position as Operations[] Supervisor.

24. The Plaintiff is still treating for injuries sustained in the July 2013 motor vehicle accident.

(Pl.'s Stmt. Facts, Dkt. # 190, ¶¶ 14-24.) Each of these statements cites to Plaintiff's affidavit as the relevant record support.

Even assuming the truth of these statements, they fail to (1) establish that Plaintiff's injuries and resulting medical bills and the loss of his job were caused by the July 12, 2013 accident; or (2) create a genuine issue of material fact as to these issues. Plaintiff has not pointed to nor can the Court locate any evidence that supports Plaintiff's assertion that he was terminated "due to injuries sustained in the July 2013 motor vehicle accident." Accordingly, summary judgment is granted in Defendant's favor as to damages sought for this alleged injury.

The only piece of record evidence that appears to even peripherally address causation with respect to the alleged physical injuries is a document entitled "Consultation Report," which was drafted by the Costa Rican doctor, Alfio P. Piva, whom Plaintiff saw once in April 2016.[1] Dr. Piva was deposed telephonically on October 29, 2016.[2] Plaintiff, representing himself at

---

[1] While Defendant contends that Dr. Riva also issued a Supplemental Report, it appears that this is simply the last page of his "Consultation Report." During Plaintiff's questioning of Dr. Piva at his deposition, Plaintiff asked Dr. Piva, "What is at the end of the fourth page of your consultation report?" (Def.'s Mot. Bar, Piva Dep., Dkt. # 238-4, at 11.) Dr. Piva responded that it "should be [his] signature, time, date, title, and contact information, and the name of the hospital too." (*Id*.) These pieces of information are located at the bottom of the document that Defendant identifies as a separate Supplemental Report. While Defendant appears to believe that there are two reports – a three-page "Consultation Report" and a one-page Supplemental Report – it appears, based on Dr. Piva's testimony, that there is only one report, with a *section* of the Consultation Report entitled "Supplemental Surgical Report." Therefore, the Court construes Dr. Piva's report as being contained in only one document, the "Consultation Report," for purposes of this ruling.

[2] All participants are designated in the deposition transcript as appearing "via telephone." (Def.'s Mot. Bar, Piva Dep., Dkt. # 238-4, at 2.) Dr. Piva was in Costa Rica, Plaintiff and the court reporter appear to have been in Virginia, and Defendant's then-counsel,

that time, briefly questioned Dr. Piva, followed by defense counsel's questioning of the doctor.

As an initial matter, Defendant moves to bar the testimony by Dr. Piva because Plaintiff failed to disclose him as an expert witness. Plaintiff disclosed the doctor solely as a treating physician who would be "testifying as a 'fact witness.'" (Def.'s Mot. Bar, Ex. B, Pl.'s Rule 26 Disclosure Stmt., Dkt. # 238-2, at 2.) According to Plaintiff's disclosure, the scope of Dr. Piva's testimony was restricted to his observations about "Plaintiff[']s condition, such as (but not limited to): alleged injuries, evaluation and treatment protocols for such." (*Id*.) Plaintiff's disclosure expressly states that Dr. Piva was not retained to provide expert testimony and that a written report was therefore not required. (*Id*.) If Dr. Piva was not hired to opine as to the cause of Plaintiff's injury but was able to come to a conclusion as to causation in the course of his treatment, then a report may not be required. *See Guarantee Tr. Life Ins. Co. v. Am. Med. & Life Ins. Co.*, 291 F.R.D. 234, 237 (N.D. Ill. 2013) ("A physician sought only for treatment is not 'retained for the purposes of litigation,' and even if the treating physician will offer an opinion on causation, the physician may not be retained within the meaning of Rule 26 as long as she was not retained expressly to review materials and form such an opinion."). If that is the case, then no Rule 26 violation occurred.

The circumstances, however, indicate that Plaintiff retained Dr. Piva specifically for this litigation. While Plaintiff refers to Dr. Piva as a "treating physician," Plaintiff saw him only once, three years after the accident. Dr. Piva did not treat Plaintiff over an ongoing period of time, but examined Plaintiff on one occasion, assessed his injuries, and set forth a proposed treatment plan. Dr. Piva's observations are outlined in his "Consultation Report,"[3] which includes the following passage that Defendant construes as an opinion on causation and seeks to bar:

> Film studies, reports and diagnoses of injuries sustained in May 2013 indicate whiplash, concussion and soft tissue injuries. These injuries do not correspond with the diagnosis of injuries sustained in the motor vehicle accident that occurred

---

Stevan Krkljes, was in Illinois. Due to technical issues with the telephone line stemming from a "volcano explosion" in Costa Rica, the second part of the deposition is disjointed and difficult to follow. (*Id*. at 16.) Dr. Piva also noted that his "mother language isn't English" so "when it comes to pretty technical [or] . . . some other issues[,] I might have problems." (*Id*. at 42.)

[3] It appears from the Plaintiff's reference to the term "percipient witness" in his Rule 26(a) disclosure that he may have intended Dr. Piva to be designated as a non-retained expert. *See Guarantee Tr. Life Ins. Co. v. Am. Med. & Life Ins. Co.*, 291 F.R.D. 234, 237 (N.D. Ill. 2013) (stating that "a former employee may be a non-retained expert for the purposes of Rule 26(a)(2) if he is a percipient witness and is testifying based upon his personal knowledge of the facts or data at issue in the litigation."). "Non-'retained' experts' summary disclosures must contain merely '(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify.'" *Id*. at 236 (citation omitted).

in July 2013 which are presented in this report.

(Def.'s Mot. Bar, Piva Report, Dkt. # 238-3.) Because the circumstances indicate that Dr. Piva was retained, at least in part, for the purposes of litigation, and any opinion on causation was not wholly based on his percipient observation, but rather through his review of reports and films from the May 2013 accident, both his opinion on causation and the facts underlying that opinion ought to have been disclosed in a detailed Rule 26(a) expert report.[4] *Vill. of Bondville v. Windstream Corp.*, No. 13 C 2078, 2015 WL 13608437, at *4 (C.D. Ill. Apr. 13, 2015) ("Forming an opinion based on a review of documents and invoices after the fact is the province of a retained expert witness under Rule 26(a)(2)(B)."). Because the proper disclosures were not made, Dr. Piva's opinion on causation, as construed by Defendant, is subject to automatic exclusion, unless the failure to disclose was either substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1).

In its motion to bar, Defendant does not address the issues of harmlessness or substantial justification, stating only that the opinion must be excluded; as already noted, Plaintiff has not filed a response to the motion to bar. Therefore, the Court has no input from the parties on the issue. The Court has reviewed the lengthy docket, including reading relevant transcripts, and it appears that Defendant chose not to hire an expert. (7/26/16 Hr'g Tr., Dkt. # 37, at 13-14 ("The Court: Is that right, that you're not going to utilize an expert? [Defense Counsel]: Yes. Yes. Yes."). Because Defendant confirmed it was not hiring an expert even after Plaintiff had disclosed Dr. Piva, and Defendant had the opportunity to depose Dr. Piva, the Court finds that Plaintiff's failure to issue a Rule 26(a) expert report by Dr. Piva was harmless. Accordingly, the motion to bar Dr. Piva's testimony is denied.

But even taking into account Dr. Piva's purported opinion on causation, the Court finds that Plaintiff has failed to create a genuine issue of material fact whether Plaintiff's physical injuries were caused by the July 12, 2013 accident. As noted above, the entirety of Dr. Piva's opinion on causation is essentially that the injuries demonstrated by the film studies, reports, and diagnoses from the May 2013 accident and the July 2013 accident[5] "indicate incongruent injuries and diagnoses" and that the May 2013 films and reports "do not correspond with the diagnosis of injuries . . . that occurred in July 2013. . . ." (Def.'s Mot. Bar, Piva Report, Dkt. # 238-3.) These statements do not indicate causation with respect to the July 2013 accident, only that the injuries reflected in the May 2013 films and reports are different from those reflected in the July 2013 films and reports. During Dr. Piva's deposition, Plaintiff did not question Dr. Piva about causation, focusing only on Dr. Piva's diagnoses and treatment plan. Dr. Piva's brief statements regarding the differences in the films and reports are insufficient to allow Plaintiff to

---

[4] *Guarantee Tr. Life Ins.*, 291 F.R.D. at 236 ("'Retained' expert witness disclosures under Rule 26(a)(2)(B) must be highly detailed to be sufficient.")

[5] It appears from Dr. Piva's testimony that the radiological films he reviewed with respect to the July 2013 accident were taken in October 2013. (Def.'s Mot. Bar, Ex. D, Piva Dep., Dkt. # 238-4, at 26.)

survive summary judgment on the issue of causation regarding his alleged injuries. As noted by another court:

> To . . . take the question of causation to the jury, non-movant's evidence must indicate a reasonable scientific probability that the stated cause produced the stated result. . . . When evidence raises a mere conjecture, surmise and speculation as to [causation], it is insufficient to present a question of causation to the jury.

*Smith v. Gen. Motors Corp.*, 376 F. Supp. 2d 664, 677 (W.D. Va. 2005) (citations and quotation marks omitted). Dr. Piva's brief and conclusory statements do not meet this standard.

**Conclusion**

For the reasons stated above, Defendant's cross-motion for summary judgment is granted and Plaintiff's motion for partial summary judgment is denied.

**Date**: August 12, 2019

**Ronald A. Guzmàn**
**United States District Judge**